IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PREFERENTIAL NETWORKS IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | Civil Action No. 2:16-cv-01374 |
| AT&T MOBILITY, LLC D/B/A AT&T | § | |
| MOBILITY, AT&T MOBILITY II LLC D/B/A | § | |
| AT&T MOBILITY, NEW CINGULAR | § | JURY TRIAL DEMANDED |
| WIRELESS SERVICES, INC. D/B/A AT&T | § | |
| MOBILITY, and CRICKET WIRELESS LLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SUR-REPLY REGARDING AT&T'S MOTION TO DISMISS UNDER RULE 12(B)(6) OR, ALTERNATIVELY, UNDER RULE 12(B)(3)**

Plaintiff, PrefNet, submits this Sur-Reply to AT&T's Corrected Reply at Doc 25, as follows:

I.      **INTRODUCTION**

AT&T's relatively brief Reply is notable more for what it fails to address than for what it does

address.  Having no answer for most of the facts, legal authorities, and arguments raised in PrefNet's

Response, AT&T largely seeks to gloss over the true issues.  AT&T's primary vehicles for doing this

are its overgeneralized, oversimplified recitation of an alleged abstract idea; its attempt to pick apart

the claims by focusing on throttling alone rather than focusing on the claims as a whole; its myopic

focus upon a single sentence from the specification, out of context, that refers  to levels of network

architecture, rather than a broad pronouncement that details and claim elements are irrelevant and to

be ignored; and its attempt to gloss over meaningful claim limitations by arguing, without support

from record evidence, that essentially everything recited in the claims except throttling should be

ignored because it is allegedly "generic."

Fundamentally, AT&T's many arguments are just that – arguments.  AT&T lacks record

evidence to back up its many assertions.  Moreover, the record evidence cited in PrefNet's Response

contradicts AT&T's assertions.  Furthermore, at a minimum, there are factual disputes and factual

issues that would need to be resolved prior to any disposition of this case on the pleadings.  Finally,

including for the reasons noted in PrefNet's Response and further herein, AT&T's motion to dismiss

PrefNet's willfulness claim is meritless and at odds with *Halo* and post-*Halo* court decisions.

II.     **ARGUMENT**

   **A.  AT&T has not met its heavy burden for dismissal at the pleadings stage.**

PrefNet's Response at Doc 22 points out, among other things, that AT&T has not met its high

burden at the pleadings stage of overcoming the presumption of validity and proving by clear and

convincing evidence, including with more than mere unsworn argument, that the claim limitations

are somehow routine, well-understood, conventional, generic, existing, commonly used, well known,

previously known, typical, and the like, including when viewed by one of ordinary skill in the art as of the April 18, 2000 priority date for the '994 patent.

### B. The lynchpin of AT&T's Motion and Reply is misinterpreted and taken out of context.

AT&T's Reply, much like its Motion, focuses heavily upon a single statement in the specification that specific details of two "lower" level features – specifically protocols and hardware configurations – are deemed "secondary."  However, the context for this statement is that, although a networked architecture is clearly required as noted throughout the specification and claims, the hardware level of the implementation may be secondary to "higher" levels of network architecture such as the application level. *See,* '994/2:63-65 & 3:26-40 (*e.g*., "The present invention provides a method and system operable at an application or higher network level for discouraging inappropriate use of network resources.").

As the Court is surely aware from its extensive experience in cases involving networks, the specific functions of networked devices may be controlled or implemented via higher or lower levels of network architecture. *See, e.g.,* https://www.techopedia.com/definition/8549/network-architecture ("Network Architecture ... hardware components used for communication, cabling and device types, network layout and topologies…").  Nonetheless, higher levels of network architecture still involve network architecture and specific applications in order to meet the claim elements.  In its myopic focus on this single sentence plucked out of proper context, AT&T improperly seeks to ignore the networked architecture, and relationship of the claim elements (*e.g.,* first/second computer system), and indeed the claim elements themselves which define the meets and bounds of the actual claimed invention.  As noted in PrefNet's Response, the novel and meaningful claim limitations comprise implementing the specific claimed steps and functions in specific applications for improving computer and network applications, including in the context of the networked architecture of the claimed invention (in contrast to, for example, the disclosure in the '900 patent to Kalkunte of a very

different architecture comprising the transfer of data from a CPU to a FIFO register of an Ethernet controller). Ex. 3 to Response, pp. 13-23.

Consistent with its misguided view of patentability, which is ungrounded in 101 jurisprudence, AT&T improperly seeks to dismiss the need for claim construction because it alleges, without any factual support, that the claim limitations identified by PrefNet as necessary to be construed in order to fairly address patentability are somehow directed to "lower level functions," and, thus, they are somehow irrelevant to the claimed invention or patentability.  To the contrary, the fact that these terms/limitations are found in the claims shows they are relevant to whether there is "something more" or whether the claims include "meaningful limitations" on any alleged abstract idea to which the claims are allegedly generally directed.  For a 101 analysis, claims must be read as a whole, and all claim limitations must be duly considered. It is improper to ignore claim limitations in this analysis, although ignoring them is exactly what AT&T attempts when seeking to overgeneralize and oversimplify the claims, while ignoring their actual claim language and limitations.

**C. AT&T's attempt to gloss over meaningful claim limitations is mistaken.**

AT&T's attempt to dismiss the meaningful '994 claim limitations as being allegedly "lower level," and thus somehow irrelevant to the patentability of the claims as a whole, lacks legal or factual merit. The appropriate analysis of whether a claim satisfies § 101 requires viewing the claim as a whole (see *Diehr*, 450 U.S. 175) and not individual limitations. *King Pharms. v. Eon Labs*, 616 F.3d 1267, 1277 (Fed. Cir. 2010).  Further, the only items referenced in the specification as being "lower level" are certain details of the networked hardware and protocols.  As noted in PrefNet's Response, and the exhibits thereto, during prosecution, the claims were narrowed as meaningful limitations were added.  Those claim limitations now present in the issued claims cannot be ignored during the 101 analysis as AT&T suggests.

**D. AT&T's irreconcilable positions on claim construction illustrate its necessity.**

AT&T chides PrefNet for not using limited pages in a 101 response to also submit its opening *Markman* brief, but AT&T's "correction" to its Response is telling.  In its original Response at Doc 23, AT&T wrote that "the claims recite generic terms, none of which transform the '994 patent from an abstract idea to a patent-eligible invention, and none of which require construction." Doc. 23, p. 3. Yet in its "corrected" Response, AT&T wrote that "… none of which require construction for the Court's eligibility analysis." Doc 25, p. 3.  As can be seen, AT&T thought it important enough to submit a corrected Response to avoid arguing that the supposedly "generic" claims terms – an assertion for which AT&T has provided absolutely no support beyond attorney argument – would need no construction.  Here, it appears that AT&T seeks a broad "generic" construction for purposes of its 101 motion but that it intends to seek a narrower, more specific construction for purposes of claim construction and its infringement positions.  This alone illustrates why the Court should not rule on AT&T's 101 motion prior to claim construction proceedings.  It would be exceedingly unjust for the Court to accept AT&T's invitation to avoid construing the claim terms because they are supposedly "generic" when even AT&T apparently contends they are narrower and more specific.

At footnote 1 to its Reply, AT&T points out that most of the terms that PrefNet states would need to be construed reside in claims 1, 4 and 6; and then argues that this somehow supports AT&T's argument that claim 1 is "representative" of the '994 patent.  AT&T's logic is flawed and its conclusion does not flow from the premise.  When, as here, a movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are "substantially similar and linked to the same abstract idea." *Perdiemco v. Industrak*, 2:15-cv-727-JRG-RSP, p.13 (E.D. Tx. Sept. 21, 1016).  AT&T has not met that burden.

**E. AT&T's attempt to dismiss the clear differences between the claimed invention and the prior art is erroneous, and at odds with AT&T's unsubstantiated allegations about the invention being known, conventional, etc.**

Further, the actual limitations of the claims of the '994 patent form a part of what distinguished the claims as being novel over the prior art of record, including the '900 patent to Kalkunte and the '232 patent to Danneels.  AT&T suggests that novelty over the prior art is irrelevant to the 101 analysis. But AT&T cannot credibly deny that the manifest differences between the '994 claimed invention and the state of the art as shown in the specification and prosecution history refute AT&T's unsupported allegations that the '994 claimed technology was somehow known, generic, etc.

**F  AT&T's argument about "admissions" is unfounded and, among other things misunderstands the word "comprises…"**

AT&T argues in its response that a single statement in PrefNet's Response that the "recited technology comprises…" somehow admits that the claims are the same as AT&T's alleged abstract idea.  This argument by AT&T is deeply flawed.  First, "comprises" means to include, but not be limited to.  Second, AT&T fails to read the rest of PrefNet's Response – *see, e.g.,* Doc 22, p. 11 ("…all claims of the '994 patent…are directed to…") – which is clearly at odds with AT&T's overgeneralized, oversimplified, and incorrect allegation of an abstract idea to which AT&T alleges the claims are directed. PrefNet's Response showed that AT&T has, if anything, merely alleged an abstract idea indicative of how prior art of record might work, and that the '994 claims were allowed because they have novel, meaningful limitations that distinguish them over the prior art. AT&T's Reply fails to substantively address this important point because AT&T has no meaningful response. AT&T's Reply, like its Motion, offers no evidence of an analogous practice that existed prior to computers or networking.

**G. At a minimum material fact issues unproven by AT&T's attorney argument preclude judgment on the pleadings.**

PrefNet's Response pointed out that, at a minimum, genuine issues of material fact exist – such as, for example, whether the claimed invention was well known, routine, conventional, etc. over sixteen years ago at the time of the invention; whether the software and hardware that implement the

claimed system were generic as alleged, and whether the claims preempt any abstract ideas – that preclude granting a Rule 12(b) Motion, especially at this early stage. AT&T's Reply fails to meaningfully address this critical shortfall in AT&T's Motion.

**H. AT&T has not refuted the benefits from the invention's technological improvements.**

Some of the technological and architectural benefits of the inventions claimed by the '994 patent are discussed in Section II.A of PrefNet's Response. When deciding issues of § 101 in a motion for judgment on the pleadings, "the Court must take the specification's statements about the purported invention to be true." *MAZ Encryption v. Blackberry* 2016 WL 5661981, *5 (D. Del., Sept. 29, 2016). AT&T's Reply does not and cannot refute these benefits.

In the recent *Tridia* case, the court held a patent on remote access software as comprising an improvement in an existing technological process and thus patent eligible. *Tridia vs. Sauce Labs*, 1-15-cv-02284 (N.D. Ga. Sept. 28, 2016). In so holding, the court noted that where a patent describes a solution which "overcomes a flaw in existing technology" and "which solves the prior art problems" noted in the patent, the court could not "say as a matter of law at this stage that the patent does not describe an inventive concept." *Id.* at pp. 20-21.  AT&T's Reply does not dispute that the '994 claimed invention overcomes flaws and problems in prior network management technology.

**I. AT&T's dismissal of prosecution history, which refutes its arguments, is mistaken.**

The discussion of the relevant prosecution history Section II.B of PrefNet's Response shows how the prior art Kalkunte '900 patent and Danneels '232 patent, which represent the state of the art at the time of the invention, involved substantially different techniques to address substantially different problems, and achieve substantially different results.  In its Motion, AT&T admitted that the prosecution history is "replete with amendments made to avoid prior art in the computer and networking fields." Mtn. at p. 6.  The foregoing illustrates that AT&T is incorrect when it alleges that the '994 patent is just applying a generic computer to prior art processes, and that AT&T is also

incorrect when it alleges that the claimed subject matter was conventional, well known, oft applied, etc.   As pointed out in PrefNet's Response, the approach was unconventional, including as distinguished from prior art techniques.   AT&T's Reply has no meaningful response to this.

**J. AT&T's arguments are not record evidence.   AT&T's allegations are unsubstantiated.**

AT&T has the burden of proving, using "record evidence" and not just "attorney's argument," that the abstract idea exception should be applied to prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished. *McRO v. Bandai*, 837 F.3d 1299, 1307, 1314 (Fed. Cir. 2016).   Yet AT&T's Reply, like its Motion, consists of mere attorney advocacy lacking support from record evidence.   Improvements in computer-related technology, such as the instant claims, and claims directed to software are not inherently abstract. *Enfish*, 822 F.3d at 1337.   Further, even if AT&T was correct in arguing a pre-internet analog, which it is not, "the existence of a pre-Internet analog does not end the inquiry, so long as the 'focus of the claims is on [a] specific asserted improvement in computer capabilities' rather than a process 'for which computers are invoked merely as a tool.'" *Device Enhancement v. Amazon*, 2016 WL 2899246, *10 (D. Del. May 17, 2016). Specifically, when software-implemented claims are directed, as these claims are, to an improvement to computer functionality, they are not abstract. *Enfish*, 822 F.3d at 1335-36.

**K. AT&T has not refuted that the '994 claims are necessarily rooted in network technology.**

As noted in PrefNet's Response, the '994 claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *See DDR Holdings v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). These inventions are necessarily rooted in computer technology, including network management and bandwidth allocation technology, including because the claims of the '994 patent comprise specific hardware and software configured to transfer information to a plurality of client devices in accordance with bandwidth-

limiting and bandwidth-adjustment techniques. Such specific hardware and software overcome problems specifically arising in the realm of computer networks and are necessarily rooted in computer technology. As such, the subject claims overcome a technical problem per *DDR Holdings* and they also "effect an improvement in any other technology or technical field.  AT&T's Reply fails to refute this. Further, in its Response, PrefNet cited multiple other cases that have held similar patents related to network management and bandwidth allocation technologies to be patent eligible. AT&T's Reply has no rebuttal to these pertinent cases upholding the patentability of reasonably comparable technologies. PrefNet's Response also points out how the machine-or-transformation test supports patentability. AT&T's Reply fails to even address this issue.

### L.  AT&T's oversimplification and dissection of the claims is improper.

Contrary to the invitation in AT&T's Reply, this Court must avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.  In *Enfish*, the Court reiterated that the § 101 analysis must not be divorced from the specific language of the claims, and that, at step one and step two of the *Alice* test, a court must look to the claims as an ordered combination, without ignoring the individual steps. *Enfish v. Microsoft*, 822 F.3d 1327, 1331 (Fed. Cir. May 12, 2016).  PrefNet's Response showed how AT&Ts "construction manager" analogy was inapplicable to the '994 claimed invention.  AT&T's Reply does not even attempt to further defend that deeply flawed analogy.

### M.  AT&T has not meaningfully addressed any claims except claim 1.

PrefNet's Response points out that Dependent claims 2-7, 9-15, and 17-18 also contain additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, as specifically noted therein. *See also* Amended Complaint, ¶¶ 34-37, 42-44, & 50-51.  AT&T's Reply ignores these claim limitations, instead meritlessly maintaining that claim 1 is "representative" of all claims, despite AT&T lacking support for this overbroad and incorrect assertion.

**N. AT&T's Reply fails to address the important issue of preemption.**

As noted in PrefNet's Response, there no evidence that the claims would preempt any field or grant Plaintiff a monopoly over an abstract idea.  AT&T's Reply alleges that "[t]he '994 patent claims an abstract idea and would preempt the field of data management," however, AT&T still lacks any record evidence or persuasive facts or argument to substantiate this assertion.

**O. At a minimum, multiple fact issues not proven by AT&T's unsubstantiated arguments preclude judgment on the pleadings.**

As noted in PrefNet's Response, including as evidenced by the claims, specification, and prosecution history, the claimed invention was not practiced by others prior to the '994 invention, nor was it a well-known, often applied, fundamental economic or conventional business practice, nor was it a practice to which general-purpose computer components were added after the fact. The claimed invention is not directed to a longstanding commercial practice, nor does it merely apply generic or general purpose computers to prior art methods, computer-readable media, or systems. Amended Complaint, ¶¶ 33, 41, & 59.  A multitude of fact issues preclude a finding of § 101 ineligibility at this stage. For example, there is at least a genuine issue of material fact as to whether the claimed invention involves only "well understood," "routine," or "conventional" activity. *See supra*. There are also genuine issues regarding the meanings of several claim terms that must be resolved before a ruling in favor of AT&T could be appropriate. Here, there are enough facts to state a claim to relief that is plausible on its face, including when all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of PrefNet. This includes all of the factual allegations contained in PrefNet's Amended Complaint and in its Response, which alone provide multiple grounds requiring denial of AT&T's Motion. For example, there is a genuine issue as to whether the claimed systems and methods are conventional or generic computer components, per AT&T, or specific purpose devices, as Plaintiff contends.  AT&T's Reply does not meaningfully address the lack of any factual disputes beyond its erroneous reasoning that facts would not matter if the claims

were sufficiently oversimplified and overgeneralized, and if claim limitations were simply ignored and glossed over as irrelevant.

### P.  AT&T's Motion on willfulness is moot and refuted by post-*Halo* decisions on point.

AT&T's Motion to Dismiss willfulness and enhanced damages allegations was mooted by PrefNet's Amended Complaint.  The new arguments in AT&T's Reply are contrary to *Halo* and post-*Halo* decisions cited in PrefNet's response and also contrary to recent decisions from this Court. *See PanOptis Pat. Man. v. Blackberry,* No. 2:16-cv-00059-JRG-RSP, Doc. 110, p. 11 (E.D. Texas Feb. 10, 2017) (PanOptis alleges actual notice of the patents, Dkt. No. 1 ¶ 103, and infringement thereafter … the Court considers the allegations sufficient to plausibly infer that BlackBerry engaged in the type of culpable behavior described in *Halo*), report and rec. adopted, No. 2:16-cv-00059-JRG-RSP, Doc. 118; *Huawei Tech. Co. v. T-Mobile*, No. 2:16-cv-00052-JRG-RSP, Order at Doc. 147, p. 7 (E.D. Texas Feb. 21, 2017) ("*Halo* eliminated *Seagate*, and … [c]ulpability can arise pre- or post-suit…"). AT&T's demand for unspecified "more facts" is meritless and inconsistent with *Halo*, and such an argument has previously been rejected in the *PanOptis* case cited above and in the *Blitzsafe, DermaFocus*, and *Simplivity* cases cited in PrefNet's Response.

### III.    CONCLUSION

For these reasons, and those stated in PrefNet's Response at Doc 22, the facts alleged in the Amended Complaint (*see* above) and apparent from the text and and/or prosecution history of the '994 patent, which the Court must accept as true on a Rule 12(b)(6) motion, require denial of AT&T's Motion, including when all reasonable inferences are drawn in favor of Plaintiff. Including because AT&T has failed to meet its heavy burden for dismissal at on Rule 12 motion, and due to the disputed factual issues – including whether the claimed inventions were "routine," "conventional," etc. over sixteen years ago; and whether the claims preempt any abstract ideas – noted herein; and for the other reasons stated herein, and in PrefNet's Response, AT&T's Motion must be denied.

February 13, 2017                            Respectfully submitted,

                                             /s/ *John J. Edmonds*
                                             John J. Edmonds – Lead Counsel
                                                jedmonds@ip-lit.com
                                                Texas Bar No. 789758
                                             Stephen F. Schlather
                                                sschlather@ip-lit.com
                                                Texas Bar No. 24007993
                                             Shea N. Palavan
                                                spalavan@ip-lit.com
                                                Texas Bar No. 24083616
                                             Brandon G. Moore
                                                bmoore@ip-lit.com
                                                Texas Bar No. 24082372
                                             Eric R. Carr
                                                ecarr@ip-lit.com
                                                Texas Bar No. 24091261
                                             **COLLINS, EDMONDS,
                                             SCHLATHER & TOWER, PLLC**
                                             1616 South Voss Road, Suite 125
                                             Houston, Texas 77057
                                             Telephone: (281) 501-3425
                                             Facsimile: (832) 415-2535

                                             *Attorneys for Plaintiff,*
                                             *Preferential Networks IP, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

February 13, 2017                            /s/ *John J. Edmonds*
                                             John J. Edmonds