# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PREFERENTIAL NETWORKS IP, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | No. 2:16-cv-01374-JRG-RSP |
| AT&T INC. MOBILITY, LLC D/B/A AT&T MOBILITY, AT&T MOBILITY II LLC D/B/A AT&T MOBILITY, NEW CINGULAR WIRELESS SERVICES, INC. D/B/A AT&T MOBILITY, and CRICKET WIRELESS LLC, | § § § § § § § § § § | |
| Defendants. | § | |

## **REPORT AND RECOMMENDATION**

In this patent case, the Court now considers Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) [Dkt. # 19]. In the motion, Defendants argue (1) the asserted claims of U.S. Patent 8,577,994 are invalid under 35 U.S.C. § 101; and (2) Preferential's claim for enhanced damages should be dismissed for failing to state a plausible claim for relief. The Court will **RECOMMEND** that Defendants' motion be **GRANTED** with respect to Preferential's allegations of pre-complaint willfulness, but otherwise **DENIED**.

## I. BACKGROUND

Defendants contend the asserted claims of U.S. Patent 8,577,994 are not directed to

patent-eligible subject matter. The '994 Patent generally concerns managing bandwidth allocation in a publicly accessible server. At the time of the underlying application, publicly accessible servers—and particularly those that provided free storage space—were often used for storing and distributing large software, music, and video files. '994 Patent at 1:28–32. Because these file types are much larger than other types of files (e.g., text-based files for web pages), the transfer of these larger files overburdened the servers and frustrated users with less bandwidth-intensive needs. *Id.* at 1:32–37.

To address this, the '944 Patent teaches a method and related system of discouraging the transfer of large files without discouraging the transfer of small ones. In a nutshell, the method progressively slows the transfer of a file over the transfer period. *Id.* at 1:56–2:5. The extent to which the transfer is slowed depends on the file size so that small files are not noticeably affected but large files can be substantially delayed. *Id.* For example, perhaps after the server transfers the first ten kilobytes of a file, the server pauses for 1 millisecond; and after the server transfers the next ten kilobytes of the file, the server pauses for 2 milliseconds; and so on, continuing to increase the delay by a millisecond between each block of ten kilobytes. *See id.* at 5:60–6:14. This does not noticeably affect relatively small files, but potentially delays the transfer of large files by hours, or even days. *Id.* As a result, users are discouraged from transferring large files, which frees bandwidth and resources for the transfer of smaller files. *Id.* at 6:28–44.

Preferential asserts claims 1, 4–6, 8, 13, 14–17, and 20 (the Asserted Claims) against

Defendants. Claims 1, 8, and 16 are independent. Claim 1, which is a method claim representative of the other independent claims for purposes of § 101 analysis, recites

> receiving, at a first computer system, information indicating a request to transfer data to a second computer system;
>
> the first computer system determining a quantity of other data previously transferred to the second computer system; and
>
> in response to said determining, the first computer system throttling transfer of the data to the second computer system, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises:
>
>> transmitting, to the second computer system, a first portion of the requested data at a first effective rate; and
>>
>> determining to delay a transmission of a second, subsequent portion of the requested data to the second computer system in order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate.

'994 Patent 6:65–7:16.

In addition to their § 101 challenge, Defendants contend Preferential's Complaint and Amended Complaint don't state a plausible claim for enhanced damages under 35 U.S.C. § 284. Defs.' Motion [Dkt. # 19] at 10. Preferential's Complaint contains a single allegation on enhanced damages:

> On information and belief, Defendants have had at least constructive notice of the '994 Patent pursuant to the Patent Act. Plaintiff reserves the right to take discovery regarding Defendants' first actual notice of the '994 Patent, including as related to whether Defendants' infringement was willful.

Compl. [Dkt. # 1] ¶ 57. Later, Preferential amended its complaint to allege Defendants had actual knowledge of the '994 Patent as of service of the Complaint. Am. Compl. [Dkt. # 21] ¶ 57. Preferential also included a laundry list of other allegations not intuitively associated with patent infringement. *See id.* (alleging, for example, the FCC fined Defendants $100 million for something akin to false advertising and suggesting Defendants have a "need" to continue infringing).

Defendants argue that, even after this amendment, Preferential does not allege any facts showing Defendants had notice of the '994 Patent prior to the filing of the complaint. Defs.' Reply [Dkt. # 25] at 5. Moreover, Defendants contend Preferential's allegations don't describe any supposed misconduct that could plausibly support a claim for willful infringement. *Id.* at 6. Thus, Defendants urge the Court to dismiss Preferential's claim for enhanced damages.

## II. APPLICABLE LAW

### A. Patent-Eligible Subject Matter

Section 101 of the Patent Act sets forth subject matter eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Courts recognize, however, that § 101 excludes laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (noting that an implicit exception for laws of nature, natural phenomena, and abstract ideas has been recognized for over 150 years). Admittedly, the line between patent-eligible subject matter and unpatentable concepts can

be blurry. *See, e.g.*, *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("Our opinions spend page after page revisiting our [§ 101] cases and those of the Supreme Court, and still we continue to disagree vigorously over what is or is not patentable subject matter.").

In *Alice*, the Supreme Court articulated a two-step test for distinguishing claims directed to laws of nature, natural phenomena, and abstract ideas from claims directed to patent-eligible applications of those concepts. *Alice*'s first step requires a court to determine if a challenged claim is directed to one of these concepts. *Alice*, 134 S. Ct. at 2355; *see also Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1340 (Fed. Cir. 2013) ("The question of eligible subject matter must be determined on a claim-by-claim basis."). To do so, the court should look at the "focus of the claimed advance over the prior art" and decide whether the claim's "character as a whole" is directed to excluded subject matter. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (considering the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter"). The court, however, must avoid oversimplifying key inventive concepts of the claim or downplaying an invention's benefits by looking at the claim generally and ignoring its specific requirements. *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).

If the Court finds an ineligible concept after considering the claims' "character as a whole," *Alice*'s second step requires the court to consider the elements of each claim—

both individually and together—to determine whether the additional elements beyond the ineligible concept transform the nature of the claim into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. For example, a claim directed to an ineligible concept may become patent-eligible when it includes unconventional steps that confine the claims to a particular application of the principle, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 84 (2012); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), or where specific technological modifications solve a problem or improve the functioning of a known system, *see Trading Techs. Int'l, Inc., v. CGQ, Inc.*, No. 2016-1616, 2017 WL 192716, at *3 (Fed. Cir. Jan. 18, 2017). But a claim likely remains patent-ineligible if it describes only post-solution activity that is purely conventional or obvious. *Mayo*, 566 U.S. at 79; *see also Alice,* 134 S. Ct. at 2358 (noting "wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself").

      **B.**    **Dismissal Under Rule 12(b)(6)**

In deciding a Rule 12(b)(6) motion, a court should accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Bell Atl. Corp.*, 550 U.S. at 555 (noting "[f]actual allegations must be enough to raise a right to relief above the speculative level"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Ashcroft,* 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).

### III. DISCUSSION

#### A. *Alice* Step 1 Applied to the Asserted Claims

Defendants argue the Asserted Claims cover the abstract idea of slowing a delivery by delaying a portion of the delivery, based, in part, on past deliveries. Defs.' Motion [Dkt. # 19] at 6. This, according to Defendants, is a well-understood, common-sense concept widely-applied in unrelated fields. *Id.* Defendants contend the Asserted Claims simply implement this abstract concept through the use of a generic computer. *Id.*

Preferential, of course, disagrees there is anything abstract about the claims. Instead, the claims are directed specifically to network access and bandwidth allocation. Preferential's Resp. [Dkt. # 22] at 9–10. As to Defendants' contention concerning use of a generic computer, Preferential asserts the claims are directed to an improvement in the functioning of a computer as opposed to the addition of conventional computer components to well-

known business practices. *Id.* at 11–13.

The Court agrees with Preferential. The Asserted Claims are directed to transmitting related data, such as parts of file, at different effective rates, with the second effective rate always being slower than the first. Considered in that light, the claims' "character as a whole" is directed to the manner by which data is transmitted between two computer systems—which is not a law of nature, a natural phenomena, or an abstract idea. And even if the underlying concept is well-known in unrelated fields, *Alice*'s Step 1 requires the Court to focus on the claimed advance *over the prior art*; Defendants have not produced evidence on that point.

The Court concludes the Asserted Claims are not directed to a patent-ineligible concept. Therefore, the Court need not proceed to *Alice*'s Step 2.

### B. Preferential's Claim for Enhanced Damages

Section 284 gives district courts discretion to award enhanced damages against those guilty of patent infringement. 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). In exercising that discretion, courts should take into account the particular circumstances of each case. *Id.* at 1933. While enhanced damages need not follow a finding of egregious misconduct, they should generally be reserved for cases typified by willful misconduct. *Id.* at 1933–34.

In *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465 (D. Del. 2016), the court reasoned that, under *Halo*, mere notice of the charge of infringement resulting from service of the complaint is sufficient to withstand a Rule 12(b)(6) challenge to a claim for enhanced

damages. *DermaFocus LLC*, 201 F. Supp. at 473. Here, the Court agrees Preferential has not adequately pleaded facts supporting pre-complaint willfulness, but agrees with the *DermaFocus* court's reasoning as to post-complaint willfulness. Accordingly, the Court will recommend Defendants' motion be granted with respect to Preferential's claim of pre-complaint willfulness, but otherwise denied.

## IV.   CONCLUSION AND RECOMMENDATION

The Court **RECOMMENDS** Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) [Dkt. # 19] be **GRANTED-IN-PART**. Specifically, the Court recommends Defendants' motion be **GRANTED** as to Preferential's allegations of pre-complaint willfulness, but **DENIED** in all other respects.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 15th day of July, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE